MINER D. WOODLING, Doing Business as MINER D. WOODLING HEATING AND VENTILATING COMPANY, v. WESTPORT HOTEL OPERATING COMPANY, a Corporation, ET AL., and LOUIS HECKEL and JOHN HECKEL, Co-partners, Doing Business as HECKEL BROTHERS, Appellants.—55 S. W. (2d) 477.

Division One, December 20, 1932.

*Edward E. Naber* for appellants.

*Morrison, Nugent, Wylder & Berger* and *Douglas Stripp* for re-spondents.

814

FERGUSON, C.—This is an appeal by an intervening mechanic lien claimant from a decree of the Circuit Court of Jackson County in an equitable suit brought by Miner D. Woodling doing business as Miner D. Woodling Heating and Ventilating Company (hereinafter referred to as Woodling) under the provisions of Sections 3180-3187, inclusive, Revised Statutes 1929, to enforce a mechanic's lien claim and to determine and adjudicate the rights and interests of various other mechanic lien claimants and other claimants, in, to and against certain lots in Kansas City and the building erected thereon

by defendant Westport Hotel Operating Company, a corporation, hereinafter referred to as Hotel Company.

The writer undertakes, with some misgiving, to make an accurate and concise statement of the history of the matter sufficient to an understanding of the questions involved. On or about March 7, 1925, the Hotel Company commenced the construction and erection of a fourteen story hotel building on lots 1, 2, 3 and 4, in block "E", Second Resurvey of Reid's Addition in Kansas City. The building, commonly known as the "President Hotel," was completed, furnished and ready for occupancy for hotel purposes on or about February 1, 1926. On May 21, 1926, the appellants, Louis Heckel and John Heckel, co-partners, doing business as Heckel Brothers (hereinafter referred to as Heckel Brothers), within the time required by statute, filed their mechanic lien statement, against the Hotel Company and said lots and the hotel building erected thereon, in the office of the Clerk of the Circuit Court of Jackson County. This statement was for the purchase price, in an aggregate amount of $3,743.71, of barber shop furniture, fixtures, equipment and supplies. Though numerous items are listed, the claim of a right to have a lien established and enforced was later abandoned as to all except three items, a mirror case, cabinet and steam sterilizer. On June 11, 1926, Heckel Brothers, within the time required by statute, filed an amended lien statement in the office of the clerk of the circuit court. This statement was the same as that filed on May 21, 1926, but showed a payment of $2,000 on the account made by the Hotel Company on May 25, 1926. On the same date, June 11, 1926, Woodling filed an equitable suit in the Circuit Court of Jackson County under our statutes providing for such proceeding. Woodling claimed a lien against the hotel property for materials and labor, asked to have such lien enforced and "that defendants, and all others claiming any mechanic's or other liens, encumbrances, right, title or interest in said real estate and building be required, severally, to submit their claims, rights, titles and liens to this court for determination and adjudication both as to the validity of the same and the extent and priorities thereof;" "that each of said defendants and all other persons having or asserting claims against said real estate and building be restrained and enjoined from bringing or proceeding further in any separate suit against" said property; and "that the various rights, interests, liens and charges of the various defendants and all other claimants in and upon said land and building be adjudged and determined and that said property be sold and the proceeds thereof be marshaled, applied and distributed according to the various legal and equitable rights and priorities of the parties." The following were made defendants in the Woodling equitable suit: the Hotel Company, as

816

owner of the property, the Southwest Wire and Iron Works, a corporation and W. L. Hutchinson Electric Company, a corporation, mechanic lien claimants, Federal Commerce Trust Company, trustee in a deed of trust made by the Hotel Company and Edward D. Ellison trustee in three deeds of trust made by the Hotel Company. The defendants in due course filed answers and each of the mechanic lien claimants, made defendants, filed a cross-bill setting up its lien claim. It will be noted that though the lien claim of Heckel Brothers was "disclosed by the proper public records" (Sec. 3181, R. S. 1929), having been timely filed and an abstract thereof recorded in the office of the clerk of the circuit court on May 21, 1926, in conformity with the statute (Secs. 3161 and 3162, R. S. 1929), they were not made parties to the Woodling suit and were not at any time served with summons therein or any other form of legal notice that such suit had been filed and was pending. On August 19, 1926, and within ninety days after the filing of their lien claim, Heckel Brothers brought an action in the Circuit Court of Jackson County to enforce and foreclose their lien as required by Section 3172, Revised Statutes 1929. The Hotel Company, Frank J. Dean, Receiver for the Hotel Company, Federal Commerce Trust Company, Trustee and Edward D. Ellison, Trustee were made defendants in the Heckel Brothers' action, all of whom except Dean, Receiver, had been made defendants in the Woodling suit. The Hotel Company and Dean, Receiver, each filed an answer, a general denial, in the Heckel Brothers' action but did not mention or plead the pendency of the Woodling suit. On December 10, 1926, the Hotel Company was adjudged a bankrupt in the United States District Court and Dean was discharged as Receiver and appointed Trustee in Bankruptcy for the Hotel Company. Upon motion of the plaintiff, Heckel Brothers, Dean, trustee in bankruptcy, was, on February 16, 1927, made a party defendant in the action brought by them and on the same day entered his appearance therein. On January 8, 1927, the title and interest of the Hotel Company, a bankrupt, in and to the hotel building and lots was sold and conveyed to the President Hotel Corporation, and that corporation executed a deed of trust against the property to the Fidelity National Bank and Trust Company as trustee securing an indebtedness therein described. On March 4, 1927, Heckel Brothers "learning of the pendency of the Woodling equitable suit" filed a motion therein to be made a party defendant and to "have their rights and interests as a mechanic lien claimant determined and adjudicated" in that suit, which motion was sustained; they were made parties defendant in the Woodling suit and granted leave to file an answer and intervening petition. On March 19, 1927, Heckel Brothers filed their separate answer and intervening petition in the Woodling

suit reciting, the filing of their mechanic lien on May 21, 1926; the filing of their amended lien on June 11, 1926; the commencement of an action to enforce such lien on August 19, 1926; the indebtedness of the Hotel Company for the articles as charged in the account set out and asking that their rights be "determined and adjudicated." On August 23, 1927, Heckel Brothers filed a motion praying the court to make the President Hotel Corporation and Fidelity National Bank and Trust Company parties to the Woodling suit. The motion was sustained and the Bank and Trust Company and the President Hotel Corporation were made parties defendant and summons ordered. The Hotel Company and the Fidelity National Bank and Trust Company, as parties defendant in the equitable suit, filed separate, but identical, demurrers to Heckel Brothers' intervening petition which were overruled. The Hotel Company and the President Hotel Corporation filed a joint answer to Heckel Brothers' intervening petition, which was a general denial. The Bank and Trust Company filed its separate answer which was a general denial with an allegation that the lien of the deed of trust in which it was named as trustee "is senior and prior to the lien, if any," of Heckel Brothers. On March 7, 1928, the Heckel Brothers' claim was tried and taken under advisement by the court. Another mechanic lien claimant, American Metal Products Corporation, not named as a party to the Woodling suit, had intervened and been made a party. On June 23, 1928, a final decree was entered in the Woodling suit and the court found that all the mechanic liens claimed by the parties to the suit "have been released and satisfied and that the American Metal Products Corporation and said Louis Heckel and John Heckel are the only parties to this action now claiming mechanic's liens against said property" and "that the American Metal Products Corporation, a corporation, intervening petitioner herein, is entitled to judgment against defendant Westport Hotel Operating Company, in the sum of $1,914.99 on account of material furnished for and upon the credit of and used in the hotel building erected on said real estate and that said judgment may be declared a special mechanic's lien on said property." "The court further finds that said Louis Heckel and John Heckel did not come into this action within the time required by statute" and it is then adjudged that Heckel Brothers, "intervening petitioners herein have and recover judgment against defendant Westport Hotel Operating Company, in the sum of $1,942.50 and that they have execution therefor in that said Louis Heckel and John Heckel are not entitled to any mechanic's lien upon the above described property or the improvements thereon for the reason they did not come into this action within the time required by statute."

■ ■ In a motion for a new trial Heckel Brothers assigned as error the ruling of the trial court that they did not "come into" the Woodling equitable suit within the time required by statute and denying them "a mechanic's lien based upon such finding." The motion for a new trial then alleges that Sections 7243 and 7247, Revised Statutes 1919 (Secs. 3183 and 3187, R. S. 1929), are "unconstitutional and in violation of Section 30, Article 2 of the Constitution of the State of Missouri" and "in violation of Section 1, Article 14 of the Constitution of the United States" in that said sections "deprive the interveners Heckel Brothers of their property without due process of law" and that said sections of the statutes are "unconstitutional and in violation of Section 53, Article 4 of the Constitution of the State of Missouri." The motion for a new trial being overruled Heckel Brothers appealed and the appeal was granted to this court on the ground that a constitutional question is involved. The assignments of error made here are the same as those we have specified as having been made in the motion for a new trial.

Our jurisdiction is wholly dependent upon the presence of a substantial constitutional question properly and timely raised and presented "involving the construction of the Constitution of the United States or of this State." [Sec. 12, Art. 6, Constitution of Missouri.] If we have jurisdiction it is upon that ground alone. It will be noted that the first suggestion of a constitutional question appearing in the case is found in the motion for a new trial. Relying on the general rule that a constitutional question raised for the first time in the motion for a new trial comes too late to give this court jurisdiction when it would not otherwise have jurisdiction, respondents say: "the alleged constitutional question upon which the appeal to this court is based was not timely raised" and the case should be transferred to the Court of Appeals. Appellants reply that the ruling of the court in its final judgment and decree that appellants did not come into the equitable case within the time required by statute and thereby lost the right to have a lien established and enforced was the first occasion in the course of the case that the provisions of the statute relating to an equitable suit of this kind were invoked and held to operate as a bar to their lien claim and that the motion for a new trial was therefore the earliest opportunity afforded them to challenge the constitutionality of such statute. Appellants point out that respondents' demurrers to their intervening petition did not raise any question as to their right under the statute in question to have their lien claim enforced in the equitable suit and that the demurrers were overruled; that respondents did not plead the provisions of the statute relating to the equitable proceeding in bar of appellant's lien claim or the right to maintain and enforce same in that

suit and that the objection made by respondents to the introduction of any testimony on the ground that appellants had not entered the suit within the time prescribed by the provisions of the statute relating to the equitable suit was, by the court, overruled. Thus it appears that there was no occasion or opportunity for appellants to challenge the statute by pleading and the ruling of the court upon respondents' objection to the introduction of any testimony was adverse to respondents' contention and did not afford appellants opportunity thereupon to challenge the constitutionality of the statute "A constitutional question must be raised timely in the course of orderly procedure. Accordingly it should be raised in the pleadings if due to be found there. If not, then at the first opportunity and kept alive. . . . In rare cases . . . it may be raised for the first time in the motion for new trial." [Miller v. Connor, 250 Mo. 677, 157 S. W. 81.] We are inclined to think that under the procedure had and the circumstances of this case that appellants' attack upon the constitutionality of the sections of the statute involved was made at the earliest opportunity arising in the course of orderly procedure.

But does appellants' contention present a real constitutional question "involving the construction of the Constitution of the United States or of this State" as required to give this court jurisdiction of the appeal on that ground? To determine this it becomes necessary to refer to various sections of the statutes touching liens allowed for work and labor done and materials and fixtures furnished in the erection or construction of a building and prescribing the procedure for preserving and enforcing such liens, and to consider appellants' contention in regard thereto and the construction and application thereof by appellants together with the application and interpretation of such statutes as made by the trial court. When this is done it appears that appellants' attack upon the constitutionality of certain provisions of such statutes is limited to the assertion that as construed, interpreted and applied by the trial court the statutory provisions in question would be unconstitutional but at the same time appellants necessarily concede that if such statutes be given the construction and application for which they contend and upon which they acted the statutes are constitutional.

We refer to the various sections of the statutes as found in Revised Statutes of 1929, being Article 3 of Chapter 25. Section 3161 fixes the time within which the lien statement must be filed. Appellants filed their lien statement within the time prescribed. Section 3162 provides for recording an abstract of the lien statement in the office of the clerk of the circuit court and such abstract of appellants' lien statement was duly recorded. Section 3172, requires "all actions"

to enforce the lien to be "commenced within ninety days after filing the lien" and that "no lien shall continue to exist, by virtue of the provisions of this article, for more than ninety days, after the lien shall be filed, unless within that time an action shall be instituted thereon." In Section 3180 we find provision made for an equitable action by which the rights of all parties claiming liens against or an interest in the property may be determined and adjudicated. Said section is as follows:

"Any and all liens in this article provided for may be adjudicated and determined and the rights of all parties interested in the same and in the property and any of the property against which the same is claimed may be adjudicated, determined and enforced in one action which may be brought by any such lien claimant after the statement for such lien is filed in the office of the clerk of court, as herein provided, or such action may be brought by any owner or lessee of the property or any of it to be affected, or mortgagee or holder of any other encumbrance thereon. Such action shall be an equitable action for the purpose of determining the various rights, interests and liens of the various mechanics' lien claimants and claimants of other liens and owner of any interest in or leasehold upon said property and for enforcing the rights of any and all such persons in, to or against the property, being the lands and buildings and either of the same and for sale of such property, land and buildings or either of the same and for marshalling and distribution of the proceeds thereof among the parties according to their respective legal and equitable rights therein. Such action shall be an equitable action for the purpose of determining, establishing and enforcing the various and respective rights of the parties thereto and for the purpose of marshalling, applying and distributing the proceeds of the sale of such property that may be ordered and decreed in said action."

The following section, 3181, specifies who shall be made parties to such equitable action.

"All persons claiming any lien or encumbrance upon, and all persons having any rights in or against and all owners and lessees of said property to be affected and any of it, all as may be disclosed by the proper public records, shall be made parties to said action and parties whose interests are divers may join as plaintiffs therein, but if they do not join as plaintiffs, then they shall be made defendants. Any person, lien claimant or other having any rights in, to, against or upon said property and any of it whose rights are not disclosed at the time of bringing said action by the proper record, shall be bound by the proceedings, orders and judgments in said actions, but any such person shall be entitled upon application to the court to be

made a party to said action at any time before final disposition by the final judgment of the court therein of the proceeds of said property and shall be entitled according to their respective rights to participate in the proceeds of the sale of such property and any of it, as the same may be thereafter received or then remain under the jurisdiction of the court. If at the commencement of said action any person whose rights are disclosed by the record is omitted as a party, he may thereafter be made party to said action either upon his own application or upon the application of any other party to said action or by the court of its own motion.''

It will be remembered that appellants' lien claim had been filed and an abstract thereof duly recorded and same was ''disclosed by the proper public records'' at the time the Woodling equitable action was commenced and though the above section requires that all such claimants shall be made parties to such equitable action appellants were not made parties to the action and were not summoned or notified therein. Thereafter appellants, within ninety days after the filing of their lien statement, commenced an action to enforce the lien. But on March 4, 1927, and more than nine months after the filing of their lien statement, appellants, having learned of the Woodling equitable action, availed themselves of that provision of the above section, that ''if at the commencement of said action any person whose rights are disclosed by the record is omitted as a party he may thereafter be made a party to said action either upon his own application or upon application of any other party to said action or by the court of its own motion,'' and filed a motion to be made a party and have their lien, action to enforce which they had filed within the time prescribed by Section 3172, adjudicated and enforced in the Woodling equitable action. The motion was sustained and they were made parties to the Woodling suit and filed their intervening petition therein by doing which appellants, in effect, say their pending action, timely filed, was merged into the equitable action. The trial court, and appellants say erroneously, applying and construing other sections of the statute, which we shall shortly cite, held, that upon the appearance of appellants, in the equitable action they, for the first time, commenced an action to enforce their lien and same not having been commenced within ninety days after the filing of their lien statement their right to a lien had expired and denied them a lien against the property. Sections 3183 and 3187 were so construed by the trial court. Said sections follow:

Section 3183. ''The equitable action above provided for shall be brought in the proper court of record regardless of the amount claimed by the plaintiff or plaintiffs in such action, and all other suits that may have been brought on any mechanic's lien claim or

demand shall be stayed and no further prosecuted, and the parties in any such other suit shall be made parties to such equitable action as in the foregoing sections provided, and any costs rightfully accrued in behalf of any lien claimant in any such other action shall be and become a part of the lien claim of such party. After the institution of such equitable action no separate suit shall be brought upon any mechanic's lien or claim against said property, or any of it, but the rights of all persons shall be adjusted, adjudicated and enforced in such equitable suit.''

Section 3187. ''Any answer, or other pleading, or motion, or entry of appearance followed by pleading in due course, filed or made in any such equitable action by any mechanic's lien claimant, within ninety days after the preliminary statement for the lien of such claimant has been filed in the proper office therefor, as required by law, or, when filed, or made, at the time required by law on a summons, in such equitable action, issued before or within such ninety-day period within which suits on mechanics' liens including this equitable action are required to be commenced, provided such equitable action is then still pending, shall be deemed a commencement of an action by such mechanic's lien claimant . . .''

It will be noted that Section 3183 provides that other suits which have been brought on lien claims and which are pending at the time of the filing of the equitable action ''shall be stayed and no further prosecuted, and the parties in such other suit shall be made parties to such equitable action.'' This part of the section has no direct application to the instant case as appellants' action to enforce their lien claim had not been filed at the time the equitable suit was commenced but the language used is urged by appellants in support of their contention as to the intent, effect and application of the sections involved as read together. The last sentence of Section 3183 was construed by the trial court to operate as a bar against the action filed by appellants and to make that action a nullity and of no effect in preserving appellants' lien. Though appellants' lien claim was ''disclosed by the proper public records'' they were not made parties to the equitable suit or summoned or notified therein. The respondents contend, and the trial court seems to have adopted that view, that appellants were nevertheless bound by the equitable suit and required to discover the filing thereof and upon their own motion to come into that suit within ninety days after the filing of their lien statement and having failed to do so they lost their right to a lien. Appellants say, that not having been made parties to the suit and notified therein they were not barred from commencing the statutory action to enforce their lien and that thereby the lien was kept alive; that upon learning thereafter of the equitable action they were authorized to come into

that action and have their pending action merged into and adjudicated in the equitable action; and that while the terms of Section 3183 barring the filing of a separate suit after the commencement of the equitable action would operate as to and bind all claimants who were made parties to that action it did not operate as a bar against them.

In support of their claim that a constitutional question exists appellants say "if this clause" (the last clause of Section 3183) "means what the trial court held it did it is clearly unconstitutional." In this statement is found the substance of appellants' argument in reference to the constitutionality of both Sections 3183 and 3187. Appellants contend that while Section 3187 is applicable as to the parties to the equitable suit the court erroneously applied the provisions thereof against them. Appellants' complaint is not that in any event the specified sections of the statute are unconstitutional but that as construed and applied by the trial court they would be unconstitutional and is ultimately reduced to this, that the trial court misconstrued the meaning and effect of said sections and erred in applying them in this case. It was held by this court, in Nickell v. Kansas City, St. L. & C. Railroad Co., 326 Mo. 338, 32 S. W. (2d) 79, that: "A challenge that the statute is unconstitutional in any event is the only challenge that is sufficient to raise a constitutional question and invest this court with appellate jurisdiction." We said in Service Purchasing Co. v. Brennan (Mo.), 32 S. W. (2d) 81, that: "To invest this court with jurisdiction, the challenge must be that the statute is inherently and totally invalid. The challenge, to be effective to invest this court with jurisdiction, must attack the validity of the statute in any event and the postulate that a certain interpretation of the statute renders it invalid is insufficient. We cannot speculate that the appellate court determining the question will decide it erroneously." And in Dietrich v. Brickey (Mo.), 327 Mo. 189, 37 S. W. (2d) 428, it was said: "The only kind of an attack that is sufficient to invest this court with jurisdiction on appeal is that the statute is inherently and wholly unconstitutional from every view." [See, also, Corbett v. Lincoln Savings & Loan Assn. (Mo.), 4 S. W. (2d) 824.]

The cause is transferred to the Kansas City Court of Appeals. *Sturgis* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All of the judges concur.